In re Risa KAY, Debtor.

**Bankruptcy No. 93–04459–6B7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 10, 1998.

Risa L. Kay, Longwood, FL, pro se.

Leigh R. Meininger, Orlando, FL, for James C. Orr, Trustee.

Jon E. Kane, Orlando, FL, for Miriam Berger.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on Trustee's, James C. Orr, Motion and Notice of Proposed Compromise of Controversy Between Trustee and Miriam Berger (Doc. 348); Motion and Notice by Trustee for Approval of Intention to Sell Property of the Estate Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f) for a Minimum Price of $625,000.00 (Doc. 349); and Debtor's, Risa Kay, Objection to Trustee's Proposed Compromise of Controversy (Doc. 350) and Objection to the Trustee's Motion to Sell Property of the Estate (Doc. 351). Appearing before the Court were Leigh R. Meininger, attorney for Chapter 7 Trustee, James C. Orr; Jon E. Kane, attorney for Miriam Berger; and Risa Kay, pro se. After reviewing the pleadings, evidence, exhibits, hearing live testimony and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Risa Kay ("Debtor") filed for voluntary relief under Chapter 11 of the Bankruptcy Code on September 15, 1993. 11 U.S.C. § 101 *et seq.* The case was converted to Chapter 7 on February 28, 1994, and James C. Orr was appointed as Chapter 7 Trustee ("Trustee"). Approximately twenty-three acres of unimproved land in Polk County, Florida with a value of between $600,000.00 and $1,000,000.00 is an asset of the Debtor's bankruptcy estate ("Property").

The Trustee entered into an agreement to sell the Property to the Debtor as part of a global compromise. The global compromise provided that the Debtor pay all the unsecured creditors and administrative expenses in full from the mortgage loan obtained to repurchase the Property. The Debtor thereupon negotiated a mortgage loan with D.N.B. Mortgage Corporation ("Mortgagee"), agreeing to give the Mortgagee a first mortgage lien on the Property. The sale in the amount of $300,000.00, exceeded the estimated sum of unsecured claims and administrative expenses;[1] any excess funds from the sale were to be remitted to the Debtor. The Debtor would receive a significant asset, after all creditors' claims have been satisfied.

The Trustee filed a Motion to sell Property of the Estate Free and Clear of Liens to the Debtor for $300,000.00 pursuant to 11 U.S.C. § 363(f) (Doc. 308). Miriam Berger ("Berger") filed an Objection to Trustee's Motion to Sell Property of the Estate (Doc. 313). Berger is successor-in-interest to a promissory note and mortgage deed, which she asserted was secured by the Property ("Mortgage").[2]

The Trustee filed an adversary complaint against Berger on November 1, 1996, to determine the validity, priority and extent of Berger's disputed Mortgage (Adv. Case Doc. 1). The Mortgage interest was declared invalid as a matter of law and unenforceable as an encumbrance on the Property (Adv. Case Docs. 24 and 25).[3]

The Trustee's motion to sell the Property to the Debtor was granted on July 25, 1997 (Doc. 317). The District Court entered an Order on August 6, 1997, staying the sale of the Property pending the outcome of Berger's appeal filed in the adversary case and motion to sell order. The stay prevents the Mortgagee from closing the Debtor's Mortgage loan. The Mortgagee will close the loan upon a favorable ruling at District Court.

The Trustee and Berger entered into a Settlement Agreement to dispose of Berger's appeals on August 13, 1997 ("August Settlement").[4] The August Settlement provided Berger a $250,000.00 secured claim on the

---

1. At the time of the hearing, the bankruptcy estate's trust fund held $47,590.51. The Trustee calculated that the estimated amount of allowed general unsecured claims and administrative expenses totaled $162,553.73. There was also real property taxes due to the Polk County Tax Collector in the amount of $33,762.56. The proceeds from the sale would have satisfied this indebtedness.

2. The Mortgage on the Property is based on a Promissory Note dated September 25, 1973, with a face value of $145,000.00. Berger, as successor-in-interest, claims that amount due on the Note and Mortgage as of December 19, 1997, is in the total amount of $760,006 .57 (consisting of the principal sum of $145,000.00, pre-default interest of $8,700.00 and post-default interest of $606,306.57). A per diem rate of $71.51 continues to accrue on the principal sum from December 20, 1997.

3. The Findings of Fact and Conclusions of Law are set forth in the Court's Memorandum Opinion dated July 25, 1997 (Adv. Case Doc. 24).

4. Berger has filed three appeals to the United States District Court pertaining to this case. The first appeal, Case No. 97–1023–CIV–ORL–22, is an action to obtain a stay of the sale of the Property pending appeal, which resulted in an Order by the District Court staying any further sale of the Property pending the outcome of the related appeal in the adversary proceeding. The second appeal, Case No. 97–1135–CIV–ORL–22 relates to an appeal of a summary judgment entered in favor of the Trustee (Adv. No. 96–430) in which Berger's mortgage lien was invalidated and allowed the Debtor to purchase the property from the Trustee for $300,000.00 over Berger's objection. The third appeal, Case No. 97–1453–CIV–ORL–19A, deals with an appeal of an order denying Berger's motion to enforce the August settlement agreement (Doc. 328) and compel the Trustee to file motion to approve the compromise giving Berger an allowed secured claim of $250,-000.00.

Property. The Trustee entered into the August Settlement to facilitate the sale of the Property to a third party in the amount of $590,000.00. The Trustee contemplated the August Settlement since the District Court's stay prevented the sale of the Property to the Debtor. Despite the August Settlement being entered into between the Trustee and Berger, the Trustee did not submit the proposed compromise to the Court. The Trustee's reasons for his change in support of the August Settlement is memorialized in an August 20, 1997 letter sent to Berger's attorney.[5]

The Trustee and Berger entered into a subsequent settlement agreement on December 19, 1997 ("December Settlement"). The December Settlement provided the Trustee sell the Property to a third party purchaser for no less than $625,000.00. Berger agreed to dismiss the pending appeals based upon having a secured claim on the Property in the amount of $200,000.00.[6]

The Trustee filed a Motion and Notice of Proposed Compromise of Controversy Between Trustee and Miriam Berger (Doc. 348) and Motion and Notice by Trustee for Approval of Intention to Sell Property of the Estate Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f) for a Minimum Price of $625,000.00, on January 7, 1998, consistent with the terms of the December Settlement (Doc. 349). The Debtor filed an objection to Trustee's Proposed Compromise of Controversy (Doc. 350) and an objection to the Trustee's Motion to Sell Property of the Estate on January 12, 1998 (Doc. 351).

The December Settlement is not fair and equitable and should not be approved.

5. The Trustee indicated that he revoked the August Settlement because he was angry over Berger's Response to a Motion filed by the Trustee in District Court after the settlement negotiations occurred. In terms of describing the strength of its case, attorney for the Trustee stated:

The draft Motion ... you prepared seems to indicate that the trustee's position vis-a-vis the appeal is weak. **In fact, the trustee feels quite strongly that he will prevail on the appeal and your client will receive nothing from the sale of the property**.... [T]he proposed settlement had little to do with the legal strength of your

## CONCLUSIONS OF LAW

■ The Trustee's proposed December Settlement is made pursuant to Fed. R.Bankr.P. 9019(a). Rule 9019(a) gives the Court broad authority in approving compromises or settlements. *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr.M.D.Fla.1993) (citing *In re Charter Co.*, 72 B.R. 70 (Bankr. M.D.Fla.1987)). "The determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge." *See e.g. Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602–603 (5th Cir.1980). The court should approve the settlement only when the settlement is fair and equitable and in the best interest of the estate. *In re Jackson Brewing Co.*, 624 F.2d at 602; *see also Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir.1994). The Court must compare the "terms of the compromise with the likely rewards of litigation." *In re Jackson Brewing Co.*, 624 F.2d at 602.

■ The Trustee, as proponent of the proposed settlement, has the burden of establishing that the settlement is fair and equitable and should be approved by the Court. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986), *cert. denied sub nom.*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). *Cf. Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir.1983) (finding that proponents of class action settlements bear the burden to establish that the settlement is fair, reasonable and adequate). Approval of a compromise under Bankruptcy Rule 9019 requires more than just a "rubber-stamping" of an agreement. *See e.g. Depoister*, 36 F.3d at 586 ("bankruptcy judge must actually exercise his discretion and not simply 'rubber stamp' the trustee's proposal.").

client's appeal. The settlement was meant to be a pragmatic resolution in accordance with the trustee's duties to the creditors of the estate.

6. Originally, the Trustee and Berger agreed upon an upward adjusting secured claim "to the extent of any amounts over $625,000.00, not to exceed the amount due by Berger under the original Note and Mortgage...." However, the provision entitling Berger to an upward adjusting secured claim was deleted in open court.

■ In determining whether the December Settlement is fair and equitable, the Court must consider the following factors: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors and a proper deference to their reasonable views in the premises. *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.1990), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

■ The first factor of *Justice* requires the Court to examine the Trustee's chances of succeeding on his claim. This determination is similar to the requirements in granting a preliminary injunction. *In re Justice,* 898 F.2d at 1549. The probability of Trustee's success on the pending appeals instituted by Berger weighs against the approval of the proposed December Settlement. The Trustee quantified the probability of his success on appeal at ninety percent. The minimal risk of losing on appeal was also communicated by the Trustee to Berger, in the June 22, 1997 letter. The Trustee stated as a basis for refusing to submit the August Settlement to the Court the following: "the trustee feels quite strongly that he will prevail on the appeal and your client will receive nothing from the sale of the property.... [T]he proposed settlement had little to do with the legal strength of your client's appeal." The Trustee has not advanced any convincing reason why he is not likely to prevail on appeal. Thus, he has failed to establish that the probability of success on appeal weighs in favor of approving the December Settlement.

The second factor is the difficulties to be encountered in the matter of collection. The Trustee is not seeking to collect a monetary judgment, but rather a determination of the legal status of Berger's Mortgage lien on the Property. On its face, there appears to be no collection difficulties. However, a broad interpretation of this element could encompass the loss of a significant asset for the

benefit of creditors if the validity of Berger's Mortgage was upheld by the District Court. The collection difficulties, even if broadly interpreted by the Court, is but one factor to consider in determining the approval of the December Settlement.

The third factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. The trial phase of this case is complete. The District Court will have to determine the limited legal issues raised on appeal by Berger; primarily whether the mortgage is a valid lien on the Property based upon the application of Florida law.

The continuation of the litigation will not unduly burden the creditors of the estate because there is minimal risk of delay and inconvenience. The District Court stayed the sale of the Property to the Debtor preventing her from obtaining financing from the Mortgagee to consummate the proposed sale to satisfy the unsecured claims and administrative expenses. Any judicially created delay is neither indefinite nor will it cause an undue inconvenience upon the estate.[7] As the delay is temporary, based upon the District Court's limited stay of the sale, the terms of the December Settlement do not weigh in favor of its approval since it would provide Berger with a $200,000.00 secured claim when such claim is invalid as a matter of law. *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995) (finding bankruptcy courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.").

The fourth factor is the paramount interest of creditors. A majority of creditors support the proposed settlement and no creditor has objected based upon a one-hundred percent distribution. Similarly, the Order of Sale of the Property to the Debtor with the Mortgagee's financing provides a one-hundred percent distribution. While the desire of the creditors are not binding, a court "should carefully consider the wishes of the majority of the creditors." *In re Transcontinental*

7. The Debtor's Mortgagee has reaffirmed its commitment to close the mortgage loan follow-

ing a favorable ruling on appeal at the District Court.

*Energy Corp.,* 764 F.2d 1296, 1299 (9th Cir. 1985) *citing* 2 Collier on Bankruptcy, ¶ 27.04, at 1090–92 (14th ed.1978). In this instance, the unsecured creditors' wishes must be weighed against the validity of the present lien in question and the adverse impact the selling of the Property will have on the Debtor.

■ The Court must determine whether the compromise falls below the threshold of reasonableness and it is not required to decide the numerous questions of law and fact raised by a motion to compromise. *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D.Fla.1988). Approval of a compromise of claim is inappropriate when the compromised claim is invalid as a matter of law. *In re Planned Protective Services,* 130 B.R. 94, 98 (Bankr.C.D.Ca.1991) *citing In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982).

Berger's claim has been determined invalid pursuant to Fla.Stat. § 95.281. Berger's alleged mortgage lien expired and is not an enforceable encumbrance upon the Property. The settlement of Berger's claim is not offered due to the merits of her claim, but for the purpose of disposing Berger's appeals and enabling the Chapter 7 Trustee to close the estate. Considered together, and in applying the four *Justice* elements to the facts of this case, the December Settlement should not be approved.

■ The Trustee owes a complex set of obligations and fiduciary duties to the bankruptcy estate. *In re WHET,* 750 F.2d 149 (1st Cir.1984) (stating a trustee is a "representative of the estate ... and as such he owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests."). The Bankruptcy Code sets forth the duties of the Chapter 7 Trustee to the Debtor under 11 U.S.C § 704(1), which provides, in relevant part: "The trustee shall—(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in

interest...." *Id.* A Chapter 7 Debtor is considered a party in interest since under 11 U.S.C. § 726 all surplus funds are returned to the Debtor. *In re George Schumann Tire and Battery Co., Inc.,* 145 B.R. 104, 107 (Bankr.M.D.Fla.1992).

A Chapter 7 Trustee has the duty to preserve estate assets for the benefit of creditors who will share in distribution of the estate and is obligated to gather and liquidate assets in an efficient manner in performing this duty to creditors. The Trustee's duties to the Debtor are not on the same plateau as estate creditors, even though there are mutual obligations to estate creditors and Chapter 7 Debtor. *See e.g. In re Davis,* 899 F.2d 1136, 1143 n. 15 (11th Cir. 1990) ("[t]he bankruptcy trustee does not represent the interests of the debtor alone; rather he owes a complex set of obligations and fiduciary duties to the court, the debtor ... and, most importantly, the creditor.") (citations omitted).

The Trustee is seeking the Court to approve the December Settlement, which gives a non-creditor a secured claim based upon an invalid lien on the Property. Because the Chapter 7 Trustee has a compelling duty to act without delay for the benefit of estate creditors, the Trustee may feel obligated to compromise and to expedite a resolution of a disputed matter, even if it is to the Debtor's detriment. The District Court's stay delays the Trustee's sale to the Debtor and the distribution to the creditors of the estate. This may encourage the Chapter 7 Trustee to propose the December Compromise, even though Berger's claim is invalid as a matter of law.[8]

■ Bankruptcy courts are courts of equity and have the power to look through the form to the substance of a transaction. *Georgian Villa, Inc. v. United States (In re Georgian Villa, Inc.),* 55 F.3d 1561, 1562 (11th Cir.1995) ("courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.").

---

8. In some cases, there is utility to settle claims brought against the estate when the purpose behind the settlement is to dismiss what the Chapter 7 Trustee might consider to be protracted nuisance appeals. The utility of this process is dubious when the appeal is limited in duration and the proposed compromise operates to the significant disadvantage of the Debtor.

The Court must scrutinize the settlement process to ensure the parties negotiated terms are fair and equitable to the estate, creditors and the Debtor. The Trustee's duty to preserve distribution of Debtor's interest is not compatible with the terms of the December Settlement. The Trustee has failed to establish, by a preponderance of the evidence, that the December Settlement should be approved.

The Trustee presented and the Court approved the sale of the Property to the Debtor in July 1997, which provided a one-hundred percent distribution to all claimants, enabled the estate to close its affairs without the risk of incurring additional administrative expenses and provided a significant distribution to the Debtor. This arrangement is in the best interest of creditors. To undo this transaction and supplant it with the December Settlement giving a non-creditor a significant windfall on an invalid lien to the detriment of the Debtor would be at odds with the factors set forth in *Justice* and against the equitable nature of this Court.

Accordingly, the Trustee's Motion for Approval of Compromise (Doc. 348) and Motion to Sell Property of the Estate Free and Clear of Liens (Doc. 349) is due to be denied; the Debtor's objection to the sale is sustained.

### ORDER

The Trustee's, James C. Orr, Motion to Approve Compromise of Controversy Between Trustee and Miriam Berger (Doc. 348) and Motion to Sell Property of the Estate Free and Clear of Liens for a Minimum Price of $625,000.00 (Doc. 349), having been tried before the Court, and in conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED and DE-CREED** that the Trustee's Motion to Approve Compromise of Controversy between Trustee and Miriam Berger is due to be **DENIED;** and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Trustee's Motion to Sell Property of the Estate Free and Clear of Liens for a Minimum Price of $625,000.00 is **DENIED.**